[No. 163-2.    Division Two.    January 13, 1971.]

THOMAS PETERSON, *Appellant,* v. GORDON G. MCDONALD
*et al., Respondents.*

*Clarence H. Fidler,* for appellant.

*Chamberlin & Johnson* and *G. B. Chamberlin,* for respondents.

PEARSON, J.—Plaintiff, Thomas Peterson, appeals from a judgment dismissing his complaint for an indebtedness allegedly owed him by defendants, Gordon G. McDonald and wife. The action was tried to the court, sitting without a jury.

Plaintiff is a commercial fish dealer from Coos Bay, Oregon. His business is incorporated as Peterson Seafoods, Inc., of which he is president.[1]

On February 12, 1962 plaintiff extended credit to one Wayne Rhodes, who at that time was master of a 48-foot

---

[1] The corporation assigned the claim of $2,914.92 to plaintiff individually.

fishing boat, *Cedar*. This boat was owned by defendant and a partner, one McLaughlin. The last credit was extended to Rhodes on December 31, 1963.

In the spring of 1965, Rhodes had taken the *Cedar* to fish in Alaskan waters. Some time during May, 1965 the *Cedar* was lost at sea and Rhodes lost his life.

The arrangement plaintiff had with Rhodes was that upon his return from fishing, Rhodes would sell his entire catch to Peterson Seafoods, Inc. The indebtedness (primarily for supplies and boat equipment) was deducted and 80 per cent of the balance was paid to Rhodes and 20 per cent of the balance was forwarded to defendant as the owner's share.

Rhodes' agreement with defendant was oral. Rhodes' only obligation was to pay defendant the owner's share of the net proceeds of the catch. The evidence does not show that defendant or his partner exercised any control over where or how the *Cedar* operated. Likewise, the evidence failed to establish that plaintiff relied in any way upon defendant's assets in extending credit to Rhodes, other than the maritime lien he would normally have against the boat, under admiralty law. *See* 46 U.S.C. § 971.

Plaintiff had no dealings with defendant prior to the time defendant turned the boat over to Rhodes during the fall of 1962.

The trial court found that the evidence conclusively established "that said vessel in question 'Cedar' was under an oral charter sometimes described as a 'Bare Boat Charter' to WAYNE RHOADES [*sic*]", (findings of fact 5) and that the business transactions were charged to the boat, rather than to the defendant owners, and were for Rhodes' use and benefit, rather than for the benefit of defendants. (Findings of fact 6.) The court concluded that the owners were not personally liable for supplies furnished to the vessel upon the request of the master.

The issue presented on appeal is whether the facts were sufficient to establish a bare boat (demise) charter under the law of admiralty, and if so, whether such a charter

insulates the owner from liability for the debts of the master incurred for necessary boat supplies and equipment.

■ Under admiralty law,[2] a demise or bare boat charter shifts possession and control of the navigation to the charterer, similar to a shoreside lease of real property. The owner still has an interest in the boat, but his principal interest is in receiving the agreed rent and getting the vessel back at the end of the term. *See* G. Gilmore and C. Black, The Law of Admiralty, § 4-20 (1957) at 215. It is quite clear that if the owner retains control over the vessel it is not a demise, but if complete control is surrendered to the charterer, a demise has been accomplished. *See United States v. Shea,* 152 U.S. 178, 38 L. Ed. 403, 14 S. Ct. 519 (1894). Oral demises are valid. *Gardner v. The Calvert,* 253 F.2d 395 (3d Cir. 1958). One of the important legal consequences of a demise or bare boat charter is that the charterer is looked on as the owner of the vessel pro hac vice and any in personam liability arising out of the ship's operations are his and do not fall upon those having title to the boat. *See* G. Gilmore and C. Black, The Law of Admiralty, § 4-23 (1957) at 218.

Of course, the suppliers of equipment to the vessel are secured, in that a maritime lien arises in their favor. However, such lien is lost where, as here, the vessel sinks.

Applying this law to the facts of the instant case, we can see that the trial court accepted defendant's testimony that complete control of the vessel was surrendered to the charterer. There was no right retained in defendant to direct the movements of the vessel, either as to where or how it was fished.

Plaintiff contends, however, that this testimony was countered by testimony that defendant, after receiving plaintiff's bill for services, made a trip to Alaska to ascertain that Rhodes would pay the bill. It is argued that this

---

[2]Admiralty law is applicable to the oral demise of a vessel operating in navigable waters. *See Gardner v. The Calvert,* 253 F.2d 395 (3rd Cir. 1958).

act established that Rhodes was simply acting as defendant's agent and was under his direction and control.

We cannot agree. Such act was fully consistent with defendant's concern that his vessel would be subject to a lien for the debt. At the very most, any inference that this act was inconsistent with defendant's testimony that he had surrendered control of the vessel to the charterer created an issue of fact, the determination of which is binding upon this court on review.

Lastly, plaintiff contends that defendants received insurance proceeds from the carrier who insured the vessel against loss, which proceeds must be held in constructive trust for payment of plaintiff's claim. The record contains no reference to insurance. The pretrial deposition in which this issue was covered, while published, was not offered nor admitted in evidence and no other testimony was elicited with reference to insurance.

In any event, the imposition of a constructive trust requires some showing of fraud or overreaching and clear, cogent, and convincing proof is essential for the imposition of such a trust. *Manning v. Mount St. Michael's Seminary of Philosophy & Science,* 78 Wn.2d 542, 477 P.2d 635 (1970). No such showing was made, even if we assume the trial court should have considered the fact that defendant received reimbursement for the loss of the vessel.

We find no merit to plaintiff's other assignments of error relating to the findings of the trial court.

Judgment is affirmed.

ARMSTRONG, C. J., and PETRIE, J., concur.